UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

AMANDA R. NOELL,              )    CASE NO. 1:14CV1894
                              )
          Plaintiff,          )
                              )
          v.                  )    MAGISTRATE JUDGE
                              )    GEORGE J. LIMBERT
                              )
CAROLYN W. COLVIN[1],         )
ACTING COMMISSIONER OF SOCIAL )    MEMORANDUM OPINION
SECURITY ADMINISTRATION,      )    AND ORDER
                              )
          Defendant.          )

Plaintiff Amanda R. Noell ("Plaintiff") requests judicial review of the final decision of the Commissioner of Social Security Administration ("Defendant") denying her applications for Social Security Income ("SSI") and Child Disability Benefits ("CDB").  ECF Dkt. #1.  In her brief on the merits, filed on January 7, 2015, Plaintiff claims that the administrative law judge ("ALJ") erred in his decision and asserts seven assignments of error.  ECF Dkt. #15.  Defendant filed a response brief on March 9, 2015.  ECF Dkt. #17.  Plaintiff filed a reply brief on March 23, 2015.  ECF Dkt. #18.

For the following reasons, the Court REVERSES the ALJ's decision and REMANDS Plaintiff's case to the ALJ for analysis consistent with the instant Memorandum Opinion and Order.

**I.    PROCEDURAL AND FACTUAL HISTORY**

On February 4, 2010, Plaintiff filed applications for SSI and CDB at age 27, alleging a disability onset date of May 22, 2002.  ECF Dkt. #12 ("Tr.") at 94.[2]  Both claims were denied on June 30, 2010.  *Id.*  On March 1, 2011, Plaintiff again filed an application for SSI.  *Id.* at 93.  The Social Security Administration denied Plaintiff's application initially and upon reconsideration.  *Id.*

---

[1]On February 14, 2013, Carolyn W. Colvin became the acting Commissioner of Social Security, replacing Michael J. Astrue.

[2]All citations to the Transcript refer to the page numbers assigned when the transcript was filed in the CM/ECF system rather than the page numbers assigned when the transcript was compiled.  This allows the Court to easily reference the Transcript as the page numbers of the .PDF file containing the transcript correspond to the page numbers assigned when the transcript was filed in the CM/ECF system.

at 103, 116.  Plaintiff then requested a hearing before an ALJ, and her hearing was held on January 18, 2013.  *Id.* at 32.  At the hearing, Plaintiff indicated that she was reopening her CDB claim for reconsideration.  *Id.* at 35.

On February 5, 2013, the ALJ denied Plaintiff's application for SSI.  Tr. at 12.  The ALJ also determined that the CDB application fell within the re-opening period as defined in 20 C.F.R. §§ 404.988, 416.1488, however, the ALJ did not find evidence of "extraordinary circumstances" that would require reopening the CDB application under 20 C.F.R. §§ 404.988, 404.989, 416.1488, 416.1489.  *Id.* at 15.  The ALJ found that Plaintiff had not engaged in substantial gainful activity since March 1, 2011, the date of Plaintiff's application.  *Id.* at 17.  Continuing, the ALJ found that Plaintiff suffered from the following severe impairments: hearing loss not treated with a cochlear implant, asthma, attention deficit disorder, and depression.  *Id.*  The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *Id.*  After considering the record, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but with the following limitations: frequently receive verbal communications; avoid even moderate exposure to noise if verbal communication is necessary for performance of the job; avoid concentrated exposure to extreme heat, extreme cold, humidity, fumes, odors, dusts, gases, and poor ventilation; and occasionally understand, remember, and carry out detailed or complex instructions.  *Id.* at 21.  Additionally, the ALJ found that Plaintiff would be limited to simple tasks, and that she could not work at a production pace, but could perform goal oriented work.  *Id.*

Next, the ALJ determined that Plaintiff had no past relevant work.  Tr. at 24.  The ALJ stated that Plaintiff was a younger individual, had at least a high school education, and that the transferability of job skills was not an issue because Plaintiff did not have past relevant work.  *Id.*  Considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform.  *Id.*  In conclusion, the ALJ found that Plaintiff had not been under a disability, as defined in the Social Security Act, since March 1, 2011, the date Plaintiff's application was filed.  *Id.* at 25.

-2-

A request for review of the ALJ's decision was filed with the Appeals Counsel on April 11, 2013. Tr. at 11. The request for review was denied. *Id.* at 6. At issue is the decision of the ALJ dated February 5, 2013, which stands as the final decision. *Id.* at 12.

On August 26, 2014, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1. Plaintiff filed a brief on the merits on January 7, 2015, asserting the following assignments of error:

A. Treating physician Dr. Riley reported moderate impairments in maintaining attention and concentration for two-hour periods of time, and in remembering, understanding, and following simple instructions. The decision mentioned these two opinions, and assigned "great weight" to the opinion that [Plaintiff] is "moderately impaired in her ability to concentrate on simple work tasks." Yet without explanation the decision omitted any limitation on simple tasks and instructions. This violated the treating-physician rule.

B. Dr. Riley also reported an inability to concentrate on simple tasks 11 to 33 percent of the time, and a moderate limitation in working at a reasonable pace, interacting with other people, and withstanding the stresses of routine unskilled work. The decision failed to mention these opinions, and no such limitations were adopted. This violated the treating-physician rule.

C. Examining clinical psychologist Dr. Zerba reported that claimant had marked limitations in accepting supervision, sustaining a regular schedule, adapting to a work setting, and tolerating five other basic mental demands of work. The ALJ did not include those limitations. Without adequate explanation, the ALJ gave "no weight" to Dr. Zerba's opinion about the pressure of day-to-day work demands. The ALJ mentioned none of Dr. Zerba's other opinions. Decisions must accept and include, or reject and explain, medical opinions.

D. The decision stated that "claimant may need an occasional reminder to complete tasks." Inconsistently, the need for occasional reminders (up to 1/3 of the workday) was not reflected in the RFC finding or in the hypothetical question. The error is harmful, as the vocational expert said that jobs would not allow reminders two to three times per day.

E. The decision found that [Plaintiff] could only "occasionally" understand, remember, and carry out "detailed" instructions. This limitation to one-third of the day for detailed instructions is inconsistent with the GED Reasoning level 2 shown in the Dictionary of Occupational Titles for each of the three occupations. Reasoning level 2 required "detailed" instructions, not limited to one-third of the day. The inconsistency with the DOT was raised at the hearing. Because of the reasoning-level issue, the vocational expert withdrew the occupation of Library Page, yet the ALJ ignored the withdrawal. Contrary to SSR 00-4p, the ALJ did not resolve the inconsistency regarding any of the occupations.

F.     The agency's regulations state that if a decision assigns "moderate" difficulties in the areas used in the agency's special technique for evaluating mental impairments, the claimant has a "severe" mental impairment that must impose significant limitations on basic mental work activities.  Here, the decision found [Plaintiff] has "moderate" difficulties in concentration, persistence or pace, and the record shows specific limitations in those areas, yet those difficulties were not reflected in the RFC finding or hypothetical question.

G.     Claimant applied in 2010 and 2011.  The prior application can be reopened "for any reason" under the agency's reopening rules, because the current application was filed within one year of the initial denial of the prior application.  The decision denied reopening, erroneously requiring there to be "extraordinary circumstances" for reopening, and failed to note that the one-year "for any reason" test applied.  The error is harmful because if claimant is found disabled, back benefits can be paid for earlier months if the earlier application is reopened.

ECF Dkt. #15 at 1-2.  Defendant filed a response brief on March 9, 2015.  ECF Dkt. #17.  Plaintiff filed a reply brief on March 23, 2015.  ECF Dkt. #18.

## II.     SUMMARY OF MEDICAL EVIDENCE

On April 15, 2010, psychologist Deborah Koricke, Ph.D., examined Plaintiff and prepared a Disability Assessment Report.  Tr. at 357.  Plaintiff indicated that she believed that she was disabled due to having learning problems, a low IQ, attention deficit hyperactivity disorder ("ADHD"), and bilateral hearing loss.  *Id.*  Dr. Koricke noted that, according to Plaintiff's background records, Plaintiff had previously completed the Weschsler Intelligence Scale for Children with a full scale IQ of seventy.  Continuing, Dr. Koricke indicated that Plaintiff was not suffering from any difficulty during the examination, had not reported any seizures in the last five years despite having four seizures in the past, and that Plaintiff had not participated in any treatment for depression since age sixteen.  *Id.* at 358.  Plaintiff reported being diagnosed with ADHD and taking Ritalin until a couple of years before the examination, and described her mental state as "sometimes moody."  *Id.*  Dr. Koricke noted that Plaintiff was friendly during the session, appeared good-humored and happy, and that there was no evidence of depression.  *Id.* at 358-59.  Plaintiff indicated that she had no difficulty with crying spells, denied any homicidal or suicidal ideation, stated that she had not attempted suicide in the past, and denied and difficulty with anhedonia, loss of interest, or social withdrawal.  *Id.* at 358.  Dr. Koricke indicated that Plaintiff had problems with

-4-

concentrating during the session, and that Plaintiff complained of being easily distracted.  *Id.* Plaintiff's Full Scale Intelligence Quotient was measured at eighty-six.

In the report prepared following the April 15, 2010 examination, Dr. Koricke also stated that Plaintiff reported going to bed at 11:00 P.M. and rising at 7:00 A.M., occasionally waking in the night, but falling back to sleep.  Tr. at 360.  Plaintiff stated that she checks her email and makes breakfast upon waking, and then performs household chores, makes lunch, and watches television until dinner.  *Id.*  Following dinner, Plaintiff used her computer prior to retiring for the night.  *Id.* Dr. Koricke reported that Plaintiff was able to perform chores such as mopping, sweeping, and dusting, and that Plaintiff was able to care for her personal hygiene independently.  *Id.*  Continuing, Dr. Koricke indicated that Plaintiff was interested in socializing.  *Id.*

When concluding her report, Dr. Koricke opined that Plaintiff put forth good efforts on all the tests, answered all questions asked, attended to the conversation, and that her "persistence to tasks was good."  Tr. at 361.  Dr. Koricke found Plaintiff's test performance to be consistent with attention deficits, particularly regarding oral stimuli.  *Id.*  Dr. Koricke indicated that Plaintiff had previously obtained a full scale IQ of seventy, but tested significantly higher during the April 2010 session.  *Id.*  Plaintiff was assigned a global assessment of functioning score of seventy.  *Id.*  Dr. Koricke opined that Plaintiff displayed only mild symptoms of ADHD based on her behavior in the past week, and that Plaintiff did not show any real limitations in daily functioning for her IQ level. *Id.*  Dr. Koricke opined that Plaintiff's mental ability to relate to others was mildly impaired, and that her mental ability to understand, remember, and follow instructions was also mildly impaired. *Id.*  Finally, Dr. Koricke stated that Plaintiff's mental ability to maintain attention, concentration, and persistence when performing simple repetitive tasks was mildly to moderately impaired, and that her mental ability to withstand the stress and pressures associated with day-to-day work activity was mildly impaired.  *Id.*

Plaintiff visited the Nord Center in May 2011 for an evaluation of her mental health.  Tr. at 438-51.  The report prepared by counselors indicated that Plaintiff showed memory impairment and a low IQ, and that Plaintiff's judgment was good.  *Id.* at 447.  The counselors stated that Plaintiff met the diagnostic criteria for adjustment disorder with anxiety and depressed mood, and that

Plaintiff had no mental retardation or development delay, but did have a low IQ.  *Id.* at 445. Plaintiff returned to the Nord Center for monthly visits from May 2011 through July 2011.  *Id.* at 431-36.  In July 2011, one of the counselors treating Plaintiff at the Nord Center, Carol Redding, completed a Mental Functional Capacity Assessment.  *Id.* at 452.  Ms. Redding indicated that Plaintiff was not significantly limited in any of the twenty work-related abilities listed on the form. *Id.* at 452.  Further, Ms. Redding stated that Plaintiff's reported hearing issues had not limited her ability to hold a job in the past, that Plaintiff had attended college-level classes on and off for years, and that Plaintiff indicated that she was willing to work part-time and go to school part-time to finish her degree in the coming year.  *Id.* at 453.

On July 27, 2011, psychologist Thomas M. Evans, Ph.D., conducted a consultative examination with Plaintiff.  Tr. at 406.  Plaintiff indicated that she was applying for benefits due to her hearing loss.  *Id.* at 407.  At the examination, Plaintiff denied being depressed at that time, and indicated that she was not sure when she last felt depressed.  *Id.* at 409.  Plaintiff denied experiencing any features of anxiety, and Dr. Evans indicated that there were no noted features of anxiety observed throughout the examination.  *Id.*  In his report, Dr. Evans opined that Plaintiff was not suffering from depression and it appeared that she had recovered from her last episode of reported depression.  *Id.* at 410.  Dr. Evans provided opinions on Plaintiff's functional assessment, stating that she had no limitations in the areas of: understanding, remembering, and carrying out instructions; maintaining attention, concentration, persistence, and pace to perform simple repetative tasks; responding appropriately to supervision and coworkers; or responding appropriately to work pressures and work settings.  *Id.* at 410-11.

Plaintiff again visited the Nord Center on August 8, 2011 and saw counselor Jennifer Sunday.  Ms. Sunday indicated that Plaintiff was alert and oriented during the visit, but her mood and affect were flat.  Tr. at 420.  Ms. Sunday also noted that Plaintiff reported depressive symptoms. *Id.*  Plaintiff returned to the Nord Center on August 25, 2011, and no significant changes were reported.  *Id.* at 418.  The August 25, 2011 appointment was the last time Plaintiff visited the Nord Center, and her case was closed on February 7, 2012.  *Id.* at 475.

Plaintiff visited Edward D. Fine, M.D., Ph.D., in August 2011. Dr. Fine opined that Plaintiff had mild to moderate downward sloping bilateral sensorineural hearing loss. Tr. at 414. In September 2011, Leanne M. Bertani, M.D., opined that Plaintiff could frequently receive verbal communications during work, but must avoid even moderate exposure to background noise when verbal communication was necessary for work. *Id.* at 101-02. Paul Morton, M.D., gave the same opinion in January 2012. *Id.* at 114-15.

In a Medical Source Statement, Michelle Riley, D.O., indicated that she had treated Plaintiff from June 2007 through June 2012, and diagnosed Plaintiff with attention deficit disorder and a hearing impairment. Tr. at 489-90. In a separate report dated February 23, 2011, Dr. Riley opined that Plaintiff suffered from attention deficit disorder, hearing loss, depression, and a learning disorder. *Id.* at 473. Dr. Riley further opined that Plaintiff's medical conditions did not affect standing, walking, or sitting, and that Plaintiff was limited to lifting six to ten pounds frequently and eleven to twenty pounds occasionally. *Id.* at 472. In a report prepared in April 2011, Dr. Riley diagnosed Plaintiff with attention deficit disorder and hearing loss, but did not identify any limitations that Plaintiff's impairments imposed on her ability to perform sustained work activity. *Id.* at 397-99. In the July 2012 Medical Source Statement, Dr. Riley opined that Plaintiff suffered moderate limitations in her ability to: remember, understand, and follow simple instructions; maintain attention and concentration for two-hour periods of time; perform work activities at a reasonable pace; interact appropriately with others; and to withstand the stresses and pressures of routine simple unskilled work. *Id.* at 489. Dr. Riley further opined that Plaintiff's attention and concentration would be impaired for simple work tasks for 11% to 33% percent of the workday. *Id.* at 490.

On September 17, 2012, Elizabeth Mease, M.D., performed an audiogram on Plaintiff. Tr. at 479. The audiogram showed moderate hearing loss, slightly worse in Plaintiff's left ear. *Id.* Dr. Mease described Plaintiff's primary conditions as hearing loss and attention deficit disorder, and her secondary conditions as asthma, obesity, and that she previously had her gallbladder removed. *Id.* at 480. Dr. Mease opined that Plaintiff's medical conditions did not affect her ability to sit, stand, walk, or carry objects. *Id.* at 479.

On September 18, 2012, psychologist Margaret Zerba, Ph.D., completed a Mental Functional Capacity Assessment.  Tr. at 482.  Dr. Zerba concluded that Plaintiff was unemployable, finding limitations in eighteen out of twenty basic work abilities.  *Id.*  Continuing, Dr. Zerba noted that Plaintiff complained of being unable to concentrate for over half an hour and an inability to remember detailed instructions when there were more than a few steps.  *Id.*  Plaintiff also stated that she needed her mother to remind her to take her medications.  *Id.*  Dr. Zerba noted that Plaintiff's mood was anxious and depressed, her affect was blunted, and that her speech was slow.  *Id.* at 486.  Additionally, Dr. Zerba stated that Plaintiff's judgment was fair or poor.  *Id.* at 487.

### III.     SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION

The ALJ determined that Plaintiff suffered from the severe impairments of hearing loss not treated with a cochlear implant, asthma, ADHD, and depression.  Tr. at 17.  Plaintiff also claimed to suffer from the severe impairment of obesity.  *Id.* at 17-18.  The ALJ found Plaintiff's obesity to be a non-severe impairment because nothing in the record indicated that Plaintiff experienced symptoms, either alone or in combination with physical and mental impairments, that caused more than a minimal limitation in her ability to perform work-related activities.  *Id.* at 18.  Additionally, the ALJ determined that Plaintiff's lumbar impairment was not a medically-determinable impairment because the record did not indicate that Plaintiff had any type of lumbar impairment.  *Id.*

Continuing, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, specifically considering Listing 2.10 (hearing loss not treated with cochlear implant), Listing 3.03 (asthma), Listing 12.02 (organic mental disorders), and Listing 12.04 (affective disorders).  Tr. at 18-20.  Plaintiff does not take issue with the ALJ's determination that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, and the ALJ's analysis on this issue need not be addressed again here.  *See* ECF Dkt. #15.

-8-

The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but with the following limitations: frequently receive verbal communications; avoid even moderate exposure to noise if verbal communication was necessary for performance of the job; avoid concentrated exposure to extreme heat, extreme cold, humidity, fumes, odors, dusts, gases, and poor ventilation; and occasionally understand, remember, and carry out detailed or complex instructions. *Id.* at 21. Additionally, the ALJ found that Plaintiff would be limited to simple tasks, and that she could not work at a production pace, but could perform goal oriented work. *Id.* In making this determination, the ALJ stated that Plaintiff was limited by asthma, but that there was no indication that Plaintiff had suffered any cardiac problems related to her asthma. *Id.* Further, Plaintiff had received treatment for her asthma, and the record indicated that Plaintiff was never hospitalized and that Plaintiff did not receive consistent treatment for her asthma. *Id.* at 21-22. Accordingly, the ALJ found that Plaintiff's alleged limitations associated with asthma were less credible, but did impose the limitation precluding Plaintiff from exposure to extreme heat, extreme cold, humidity, fumes, odors, dusts, gases, and poor ventilation. *Id.* at 22.

The ALJ next found that Plaintiff was limited by hearing loss. Tr. at 22. The ALJ summarized Plaintiff's medical history, indicating that Plaintiff had suffered from hearing loss since age five, that Dr. Fine opined that Plaintiff suffered from mild to moderate downward sloping bilateral sensorineural hearing loss, and that Plaintiff reported that her hearing issues had not prevented her from obtaining a job in the past. *Id.* The ALJ also considered Dr. Mease's finding that Plaintiff was able to respond appropriately to loud conversational speech without hearing aids, and that Plaintiff was able to recognize two of three words in each ear when words were spoken at a distance of three feet without the help of her ability to read lips. *Id.* Further, the ALJ considered Plaintiff's ability to hear normal conversational speech at a distance of ten feet with hearing aids. *Id.* For these reasons, the ALJ determined that the alleged symptoms associated with Plaintiff's hearing loss were not as limiting as claimed, but did impose the limitation that Plaintiff could not be exposed to noise if verbal communication is necessary for the performance of a job. *Id.*

The ALJ determined that Plaintiff suffered from the mental limitations of ADHD and depression. Tr. at 22. After indicating Plaintiff's low grade point average and her IQ of eighty-six,

the ALJ noted that Plaintiff was able to attend college.  *Id.*  The ALJ also looked to treatment records from the Nord Center indicating that Plaintiff had mild symptoms of depression, but was generally functioning "pretty well."  *Id.*  After mentioning an opinion from Dr. Riley stating that Plaintiff had difficulty staying on task, focusing, and following complex directions, and a second opinion from Dr. Riley stating that Plaintiff was only moderately impaired in her ability to concentrate on simple work tasks, understand simple instructions, and follow simple instructions, the ALJ afforded more weight to the latter opinion because Dr. Riley's opinion that Plaintiff is only moderately impaired in these areas was well supported by the Nord Center treatment records.  *Id.*

Next, the ALJ looked to Plaintiff's statements to Dr. Zerba, namely, that she does not participate in any social activities outside of her home, and that she is home most of the time watching movies or using the computer.  Tr. at 23.  The ALJ determined that these statements were inconsistent with other statements made by Plaintiff indicating that she attends sporting events, concerts, visits the YMCA, and "goes out as often as she can."  *Id.*  Regarding Plaintiff's contention that she requires her mother to remind her to take her medication, the ALJ found that while Plaintiff may rely on her mother to remind her to take her medications, Plaintiff does not need to be reminded to leave the house or to attend various events.  *Id.*  Further, the ALJ looked to inconsistent statements made by Plaintiff regarding her ability to shop alone.  Based on the inconsistent statements made by Plaintiff regarding socialization and memory, the ALJ determined that Plaintiff was not fully credible.  *Id.*  The ALJ afforded no weight to the opinion of Dr. Zerba for two reasons: (1) Dr. Zerba was not Plaintiff's treating physician and did not treat Plaintiff on a regular basis; and (2) Dr. Zerba's opinion was contradictory to the treating physician's opinion and the Nord Center treatment records showing that Plaintiff's impairments are only mild to moderate.  *Id.*  For these reasons, the ALJ found that Plaintiff's medically-determinable impairments could reasonably be expected to cause the alleged symptoms, however, the ALJ also found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible.  *Id.*

The ALJ gave great weight to the opinions of state agency physician Dr. Koricke.  Tr. at 23. After summarizing Dr. Koricke's opinion, the ALJ stated that he was affording great weight to the

opinion of Dr. Koricke because the opinion was supported by her findings and was consistent with the Nord Center treatment records and the findings of Dr. Riley.  *Id.* at 23-24.  The ALJ afforded Dr. Evan's opinion that Plaintiff had no mental limitations some weight because it demonstrated that Plaintiff's symptoms were not as severe as alleged.  However, based on the records of the treating physician, Dr. Riley, and the Nord Center, the ALJ determined that Plaintiff did suffer from mental limitations to the extent described in the decision.  *Id.* at 24.

Continuing, the ALJ determined that Plaintiff had no past relevant work, was a younger individual since she was twenty-eight years old, and had at least a high school education.  Tr. at 24. Considering Plaintiff's age, education, work experiences, and RFC, the ALJ found that there were jobs in the national economy that Plaintiff could perform.  *Id.*  At the hearing, the ALJ asked the vocational expert ("VE") whether jobs existed in that national economy that Plaintiff could perform, and the VE stated that Plaintiff could perform the jobs of page/library assistant, delivery marker/router, and cleaner in a hospital.  *Id.* at 25.  Based on the testimony of the VE, and all of the foregoing, the ALJ determined that Plaintiff had not been under a disability, as defined in the Social Security Act, since March 1, 2011, the date Plaintiff's application was filed.  *Id.*

## IV.    STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to social security benefits.  These steps are:

1.    An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2.    An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3.    If an individual is not working and is suffering from a severe impairment which meets the duration requirement, *see*  20 C.F.R.  § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4.    If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

-11-

> 5.  If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992).  The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step.  *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## V.  STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability.  This Court's review of such a determination is limited in scope by §205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. §405(g).  Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards.  *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Cole v. Astrue*, 661 F.3d 931, 937, citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (citation omitted).  Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234 (6th Cir. 2007).  Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the record upon which the ALJ could have found plaintiff disabled.  The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir.2001).  However, an ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole, supra*, citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009) (citations omitted).

## VI.  LAW AND ANALYSIS

### A.  First and Second Assignments of Error

Plaintiff's First Assignment of Error asserts:

> The treating physician, Dr. Riley, reported moderate impairments in maintaining attention and concentration for two-hour periods of time, and in remembering, understanding, and following simple instructions.  The decision mentions these two opinions, and assigned "great weight" to the opinion that [Plaintiff] is "moderately impaired in her ability to concentrate on simple work tasks."  Yet without explanation the decision omitted any limitation on simple tasks and instructions.

ECF Dkt. #15 at 19.  Plaintiff's Second Assignment of Error claims:

> Dr. Riley also reported a moderate limitation in working at a reasonable pace, interacting with other people, and withstanding the stresses of routine unskilled work; and an inability to concentrate on simple work tasks 11 to 33 percent of the time.  The decision failed to mention these opinions, and no such limitations were adopted.

*Id.* at 21.

Plaintiff's First and Second Assignments of Error essentially allege that the ALJ's decision violated the treating physician rule by erroneously summarizing the 2012 report prepared by Plaintiff's treating physician after affording great weight to Dr. Riley's opinion, and by failing to adopt or mention several additional limitations contained in the opinion of Dr. Riley.  ECF Dkt. #15 at 19-21.  Specifically, as to her First Assignment of Error, Plaintiff claims that the ALJ combined Dr. Riley's opinion regarding Plaintiff's ability to remember, understand, and follow simple instructions with the separate opinion regarding Plaintiff's persistence, namely, the impairment of Plaintiff's ability to maintain attention and concentration for two-hour periods and that her attention and concentration would be impaired from 11% to 33% of the workday.  *Id.*  Plaintiff asserts that the ALJ's decision omitted Dr. Riley's opinions about persistence and pace, as well as improperly minimizing the impact of a moderate impairment in concentration when performing simple work tasks.  *Id.* a 20-21.  Further, Plaintiff argues that the ALJ's RFC finding did not recognize any limits on Plaintiff's concentration when performing simple work tasks, and that the decision gave no explanation as to why a moderate limitation was equivalent to no limitation.  *Id.* at 21.  Plaintiff's Second Assignment of Error asserts that the ALJ's decision failed to mention limitations imposed on her ability to work at a reasonable pace, interact with other people, or withstand the stresses of

-13-

routine work, as well as reiterating that the ALJ's decision did not mention Dr. Riley's opinion that Plaintiff would be unable to concentrate on simple work tasks for 11% to 33% of the workday.

Defendant argues that the ALJ specifically considered the portions of Dr. Riley's opinion with which Plaintiff has taken issue, and that the agency's regulations and rules make it clear that it is the ALJ's responsibility to assess a claimant's residual functional capacity. ECF Dkt. #17 at 8 (citing 20 C.F.R. § 416.946(c); SSR 96-5p, 1996 WL 374183, at *2). Further, Defendant asserts that no doctor's opinion or testimony is alone conclusive on the issue of RFC, but rather, SSR 96-5p expressly states that RFC is not a medical determination and is instead an administrative finding. ECF Dkt. #17 at 8-9. Defendant asserts that the ALJ gave Dr. Riley's opinion great weight based on the records from the Nord Center, and took Dr. Riley's opinion regarding Plaintiff's severity rating and considered the opinion when determining Plaintiff's RFC. *Id.* at 9. Finally, Defendant argues that Plaintiff has not established that the ALJ's conclusion was not based on substantial evidence. *Id.* Defendant does not argue that the treating physician rule is inapplicable.

Defendant is correct in asserting that an RFC determination is left to the ALJ, however, the ALJ is bound by the rules and regulations of the Social Security Administration, including the treating physician rule. An ALJ must give controlling weight to the opinion of a treating source if the ALJ finds that the opinion is well-supported by medically acceptable clinical and diagnostic techniques and not inconsistent with the other substantial evidence in the record. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). If an ALJ decides to discount or reject a treating physician's opinion, he must provide "good reasons" for doing so. SSR 96-2p. The ALJ must provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This allows a claimant to understand how her case is determined, especially when she knows that her treating physician has deemed her disabled and she may therefore "'be bewildered when told by an administrative bureaucracy that [s]he is not, unless some reason for the agency's decision is supplied.'" *Wilson,* 378 F.3d at 544 (quoting *Snell v. Apfel,* 177 F.3d 128, 134 (2d Cir. 1999)). Further, it "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.* If an ALJ fails to explain why he or she rejected

-14-

or discounted the opinions and how those reasons affected the weight afforded to the opinions, this Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers,* 486 F.3d at 243 (citing *Wilson*, 378 F.3d at 544).

The Sixth Circuit has noted that, "while it is true that a lack of compatibility with other record evidence is germane to the weight of a treating physician's opinion, an ALJ cannot simply invoke the criteria set forth in the regulations if doing so would not be 'sufficiently specific' to meet the goals of the 'good reason' rule." *Friend v. Comm'r of Soc. Sec.*, No. 09-3889, 2010 WL 1725066, at *8 (6th Cir. 2010). The Sixth Circuit has held that an ALJ's failure to identify the reasons for discounting opinions, "and for explaining precisely how those reasons affected the weight" given "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Parks v. Social Sec. Admin.*, No. 09-6437, 2011 WL 867214, at *7 (6th Cir. 2011) (quoting *Rogers*, 486 F.3d at 243 ). However, an ALJ need not discuss every piece of evidence in the administrative record so long as he or she considers all of a claimant's medically determinable impairments and the opinion is supported by substantial evidence. *See* 20 C.F.R. § 404.1545(a)(2); *see also Thacker v. Comm'r of Soc. Sec.*, 99 Fed.Appx. 661, 665 (6th Cir. 2004). Substantial evidence can be "less than a preponderance," but must be adequate for a reasonable mind to accept the ALJ's conclusion. *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010) (citation omitted).

The ALJ's substantive discussion of Dr. Riley's opinion consists of the following:

> During an examination dated February 23, 2011, treating physician Michelle Riley, D.O., reported that [Plaintiff] had difficulty staying on task, focusing, and following complex directions. In a medical source statement dated July 25, 2012, Dr. Riley reported that [Plaintiff] was only moderately impaired in her ability to concentrate on simple work tasks, and to understand and follow simple instructions. The undersigned gives great weight to Dr. Riley's opinion that [Plaintiff] is only moderately impaired in her ability to concentrate because it is well supported by the Nord Center treatment records and function report discussed above.

Tr. at 22. The ALJ mentions Dr. Riley's opinion two additional times in the decision, but only to indicate whether another physician's opinion was consistent or inconsistent with Dr. Riley's opinion. *Id.* at 23-24.

-15-

As an additional matter, the ALJ indicates that he is providing "great weight" to the opinion of Dr. Riley, Plaintiff's treating physician, rather than "controlling weight," as is required. *See Wilson*, 378 F.3d at 544. The ALJ made no indication why he chose not to provide controlling weight to the opinion of Plaintiff's treating physician and did not provide any reasons why he thought Dr. Riley's opinion was inconsistent with the other substantial evidence in the record. *Id.* Even if the ALJ meant to afford controlling weight to Dr. Riley's opinion and harmlessly indicated that he was affording "great weight" instead, the ALJ omitted portions of Dr. Riley's opinion without explanation when determining Plaintiff's RFC. Plaintiff correctly asserts that the ALJ's decision omitted any discussion of, or RFC finding regarding, Dr. Riley's opinion that Plaintiff's attention and concentration when performing simple work tasks would be impaired from 11% to 33% percent of the workday, as well as Plaintiff's limitations interacting with other people and withstanding the stresses of routine unskilled work. The ALJ did not mention these opinions, much less provide any discuss of how these opinions were inconsistent with other substantial evidence in the record. Contrary to Plaintiff's position, it does appear that the ALJ addressed Dr. Riley's opinion that Plaintiff had a moderate limitation in working at a reasonable pace, as is evidenced by the ALJ restricting Plaintiff to jobs where production pace work would not be required. However, since the ALJ failed to provide controlling weight to the opinion of Plaintiff's treating physician, failed to provide reasons as to why the opinion of the treating physician was discounted, and omitted portions of the treating physician's opinion without explanation, this case must be remanded.

**B.**      **Third, Fourth, Fifth, and Sixth Assignments of Error**

In light of the undersigned's recommendation that the Court remand the instant case because the ALJ's RFC determination failed to comply with the treating physician rule, the undersigned further recommends that the Court decline to address all but one of the remaining allegations as the ALJ's re-evaluation and analysis on remand may impact his findings on these issues in the remaining steps of the sequential evaluation for the reasons presented below. *See Reynolds v. Comm'r of Soc. Sec.*, 424 Fed. Appx. 411, 417 (6th Cir. 2011).

Plaintiff's Third Assignment of Error asserts that the ALJ did not reasonably weigh Dr. Zerba's opinion. The ALJ stated that the decision regarding the weight afforded to Dr. Zerba's

-16-

opinion, which indicated that Plaintiff had limitations in eighteen out of twenty basic work abilities, was made, in part, because Dr. Zerba's opinion was inconsistent with Dr. Riley's opinion.  Tr. at 23.  This case is being remanded for the ALJ to fully address Dr. Riley's opinion, which may have an affect on whether Dr. Zerba's opinion is inconsistent with Dr. Riley's opinion, in part or in whole.

Plaintiff's Fourth and Fifth Assignment of Error involve the testimony that was offered by the VE.  Since this case is being remanded for a proper analysis of Dr. Riley's opinion and a determination of Plaintiff's RFC based on that analysis, the jobs that Plaintiff can perform may change, if the VE finds that there are such jobs that exist in the national economy.

Plaintiff's Sixth Assignment of Error claims that the ALJ found Plaintiff had moderate difficulties in concentration, persistence, and pace, yet those difficulties were not reflected in the RFC finding or hypothetical question posed to the VE.  As discussed above, this case is being remanded for a proper RFC analysis, which may require that the VE be presented with a hypothetical individual with different limitations.  Accordingly, Plaintiff's Sixth Assignment of Error will be addressed by the ALJ on remand.

### C.    Seventh Assignment of Error

Plaintiff's Seventh Assignment of error asserts:

The decision denied reopening, erroneously requiring there to be "extraordinary circumstances" for reopening, and failed to note that the one-year "for any reason" test applied.

ECF Dkt. #15 at 25.  This assignment of error is regarding Plaintiff's application for CDB.

10 C.F.R. § 416.1488(a) reads, "[a] determination, revised determination, decision, or revised decision may be reopened - [w]ithin 12 months of the date of the notice of the initial determination."  It is within the Secretary's discretion whether or not to reopen the case.  *Bogle v. Sullivan*, 998 F.2d 342, 346 (6th Cir. 1993); 10 C.F.R. § 416.1488(a) ("A determination, revised determination, decision, or revised decision *may* be reopened..." (emphasis added)).  When a prior decision is not reopened, this Court has no jurisdiction to review the actions of the Secretary in the absence of a colorable constitutional claim.  *Califano v. Sanders*, 430 U.S. 99, 107-08 (1997); *Cottrell v. Sullivan*, 987 F.2d 341, 345 (6th Cir. 1992); *Harper v. Sec. of Health & Human Servs.*,

-17-

978 F.2d 260, 262 (6ᵗʰ Cir. 1992); *Blacha v. Sec. of Health & Human Servs.,* 927 F.2d 228, 231 (6ᵗʰ Cir. 1990).

Plaintiff asserts that she has raised a colorable constitutional claim because she alleged a denial of "procedural due process." Plaintiff has not raised a colorable constitutional claim, only asserting that ALJ's decision denies Plaintiff procedural due process by using an extraordinary circumstances test for reopening. ECF Dkt. #15 at 25. While the undersigned agrees with Plaintiff that reopening does not require extraordinary circumstances, the discretion to reopen lies with the Secretary. "Simply couching in constitutional language what is in reality an argument, that the Secretary abused [her] discretion in refusing to re-open a claim, does not convert the argument into a colorable constitutional challenge." *Ingram v. Sec. of Health & Human Servs.*, 830 F.2d 67 (6ᵗʰ Cir. 1987) (citing *Gosnell v. Sec. Health & Human Servs.*, 703 F.2d 216 (6ᵗʰ Cir. 1983)). Accordingly, this Court does not have jurisdiction to review this determination because Plaintiff has not raised a colorable constitutional claim.

**VII.**   **CONCLUSION**

For the foregoing reasons, the Court REVERSES the ALJ's decision and REMANDS Plaintiff's case to the ALJ for analysis consistent with the instant Memorandum Opinion and Order.


Date: February 11, 2016                       */s/George J. Limbert*
                                              GEORGE J. LIMBERT
                                              UNITED STATES MAGISTRATE JUDGE